IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ____ D.C.

05 DEC 21 PM 1:56

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

```
Z GEM COMPANY,                      )
ZAKAI GOL AND ORNAH GOL, and        )
PENN-AMERICA GROUP, INC.,           )
                                    )
     Plaintiffs,                    )
                                    )
                                    )
v.                                  )    No. 03-2983 Ma/P
                                    )
DOLLAR RENT-A-CAR,                  )
DOLLAR RENT-A-CAR SYSTEMS, INC.,    )
and DTG OPERATIONS, INC.,           )
                                    )
     Defendants.                    )
```

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Plaintiffs Z-Gem Company ("Z-Gem"), Zakai Gol and Ornah Gol ("the Gols"), and Penn-America Group, Inc. ("Penn-America") bring a negligence claim against Defendants Dollar Rent-A-Car ("Dollar"), Dollar Rent-A-Car Systems, Inc., and DTG Operations, Inc[1]. ("DTG"). Plaintiffs allege that Defendants failed to provide adequate security against a foreseeable harm. Defendants filed a motion for summary judgment on July 1, 2005, and Plaintiffs replied on August 1, 2005. Plaintiffs filed a supplemental memorandum of law in opposition to the motion for summary judgment on August 4, 2005.

---

[1] Defendant DTG Operations, Inc. states in a Rule 7.1 disclosure statement that it was improperly named as Dollar Rent-A-Car Systems, Inc. in the original complaint. DTG Operations, Inc. was formerly known as Dollar Rent-A-Car Systems, Inc. and is publicly owned and traded on the New York Stock Exchange.

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 12-23-05

For the following reasons, Defendants' motion for summary judgment is GRANTED.

I.  **Jurisdiction and Venue**

Plaintiff Z-Gem is a corporation organized under the laws of New York, and the Gols are citizens of the state of New York. Plaintiff Penn-America is a corporation organized under the laws of Pennsylvania. Defendant Dollar is a commercial business organized under the laws of Tennessee. Defendant DTG is a corporation organized under the laws of Oklahoma. Because the amount in controversy exceeds $75,000, the court has diversity jurisdiction under 28 U.S.C. § 1332.

II. **Facts**

The Gols are sole proprietors of Z-Gem, a business that buys and sells precious and semi-precious stones, gems, jewels, and jewelry. Penn-America was the insurer for Z-Gem and the Gols. (Complaint ¶ 1-3.) In February 2001, the Gols traveled to Memphis, Tennessee, to meet with vendors, dealers, and/or prospective clients to purchase and sell jewelry. (Id. ¶ 8.) The Gols rented an automobile from Defendants. On or about February 21, 2001, the Gols returned the rental car to the Defendants at their Airways location. (Id. ¶ 9, 11.) On the Defendants' premises, one or more unidentified individuals assaulted the Gols and robbed them of precious and semiprecious gemstones and jewelry valued in excess of

2

$400,000.00. (Id. ¶ 12-13.) Because of the robbery, Plaintiff Penn-America was obligated to pay substantial sums of money for the replacement of the stolen jewelry. (Id. ¶ 14).

Defendants assumed ownership and control of the premises at 2780 Airways Boulevard from licensee HDF&H on September 1, 2000. (Mtn. for Summ. Judgment at 1.) In early September 2000, Darrell Stripling ("Stripling"), Eastern Regional Security Manager for Defendants, visited the location, assessed security, and recommended certain security measures. (Id. at 1-2.) Based on his recommendations, Defendants installed a new color closed circuit television with nine cameras, tiger teeth at the areas of ingress and egress, gate arms, and a checkpoint booth at the exit. These installations were completed by the end of October, 2000, and were fully operational on February 21, 2001, when the Plaintiffs were attacked. The Plaintiffs allege that the Defendants failed to provide adequate security against a foreseeable harm.

Before the crimes against the Gols, the only incident of criminal activity on the Defendants' Airways premises had been the theft of two vehicles in September, 2000. (Mtn for Summ. Judgment at 7.)

### III. Summary Judgment Standard

Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is appropriate "if the pleadings, depositions,

3

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet this burden, however, by pointing out to the court that the respondents, having had sufficient opportunity for discovery, have no evidence to support an essential element of their case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party opposing the motion must "do more than simply show that there is some meta-physical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not oppose a properly supported summary judgment motion by mere reliance on

4

the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmoving party must present "concrete evidence supporting its claims." Cloverdale Equip. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The district court does not have the duty to search the record for such evidence. See Interroyal Corp. v. Sponseller, 889 F.2d 108, 110-11 (6th Cir. 1989); Street, 886 F.2d at 1479-80. Parties have the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in their favor. Id.

### IV. Choice of Law

A federal district court is required to apply the "choice of law" rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Cole v. Mileti, 133 F.3d 433, 437 (6th Cir. 1998). "Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side." Klaxon, 313 U.S. at 496. Therefore, this court must apply the Tennessee rule to determine which jurisdiction's law to apply.

For tort claims, Tennessee follows the "most significant relationship" rule, which provides that "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992). The injury occurred in Tennessee, and both parties assume that Tennessee law applies. No party alleges that another state has a more significant

5

relationship to the litigation. The court, therefore, will apply Tennessee law.

## V. Analysis

To establish a negligence claim against the Defendants, the Plaintiffs must establish (1) a duty of care owed by the Defendants to the Plaintiffs; (2) conduct by the Defendants falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal causation. McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995).

Duty is the legal obligation a defendant owes to a plaintiff to conform to a reasonable person standard of care in order to protect against unreasonable risks of harm. See McClung v. Delta Square Ltd. Partnership., 937 S.W.2d 891, 894 (Tenn. 1996); McCall v. Wilder, 913 S.W.2d at 153. In assessing whether a duty is owed in a particular case, courts must apply a balancing approach, based upon principles of fairness, to identify whether the risk to the plaintiff was unreasonable. See Turner v. Jordan, 957 S.W.2d 815, 818 (Tenn. 1997). A "risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweighs the burden upon defendant to engage in alternative conduct that would have prevented the harm." McCall v. Wilder, 913 S.W.2d at 153; Rice v. Sabir, 979 S.W.2d 305, 308 (Tenn. 1998). Courts must consider

6

several factors in determining whether a risk is an unreasonable one, including:

> the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or the social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

Coln v. City of Savannah, 966 S.W.2d 34, 39 (Tenn.1998); McCall v. Wilder, 913 S.W.2d at 153.

McClung sets forth the following principles to be considered in determining duty in the context of third-party criminal acts:

> A business ordinarily has no duty to protect customers from the criminal acts of third parties which occur on its premises. The business is not to be regarded as the insurer of the safety of its customers, and it has no absolute duty to implement security measures for the protection of its customers. However, a duty to take reasonable steps to protect customers arises if the business knows, or has reason to know, either from what has been or should have been observed or from past experience, that criminal acts against its customers on its premises are reasonably foreseeable, either generally or at some particular time.

McClung, 937 S.W.2d at 902. In applying these guidelines, courts must balance the foreseeability and gravity of harm against the commensurate burden imposed on the business to protect against the harm. Id. at 902.

Under McClung, "a duty to take reasonable steps to protect customers arises if the business knows, or has reason to know, either from what has been or should have been observed or from past

7

experience, that criminal acts against its customers on its premises are reasonably foreseeable." Id. at 902. Both McClung and Staples v. CBL & Assocs., 15 S.W.3d 83 (Tenn. 2000) hold that prior crime in the immediate vicinity may be considered to determine foreseeability.

In McClung the court concluded that the risk of injury to the plaintiff was foreseeable. The court acknowledged that, "[a]s a practical matter, the requisite degree of foreseeability essential to establish a duty to protect against criminal acts will almost always require that prior instances of crime have occurred on or in the immediate vicinity of the defendant's premises." Id. at 902. The plaintiff offered evidence from the Memphis Police Department that indicated that during the one-year period before the crime at issue, approximately 164 criminal incidents had occured on or next to defendant's parking lot. Id. at 903. The plaintiff also introduced evidence that nearby major retail centers used security measures to protect customers, while the defendant had no such measures in place. Id. at 904.

In Staples, the court also concluded that the risk of injury to the plaintiff was foreseeable. Although the plaintiff offered evidence of 286 prior criminal incidents at the mall where she was abducted, the court focused on the fact that the plaintiff had notified mall employees that she was being stalked and that the employees had failed to alert security. Id. at 91. The exchange

8

between the plaintiff and the mall employees put the defendant on notice that the plaintiff was in danger of being abducted, establishing foreseeability and a duty. Id.

No material facts are in dispute in this case.[2] The issue is whether the Defendants could reasonably have foreseen the injury to the Plaintiffs, thereby establishing a duty.

In their motion for summary judgment, the Defendants argue that the only incident of criminal activity at the Airways location had been the theft of two vehicles in September, 2000. Therefore, Defendants contend that they did not owe the Plaintiffs a duty of care because Defendants could not reasonably have foreseen that the Gols would be the victims of a third-party criminal act. Defendants contend that the Gols cannot establish a prima facia case of negligence. (Mtn. for Summ. Judgment at 4.)

The Plaintiffs contend that they have presented sufficient evidence to raise a question of fact about the foreseeability of the crime and that the issue should be decided by a jury. (Resp. in Opp. To Mtn. for Summ. Judgment at 7.) In particular, the Plaintiffs direct the court to the deposition of their security expert, Daniel H. Kropp ("Kropp"). Kropp states that, when performing a risk assessment, businesses should look at the

---

[2] There may be a disagreement about whether warning signage had been installed as a security measure. That issue is not material. For purposes of this motion for summary judgment, however, the court will assume that Defendants did not have visible warning signage.

9

historical crime data from the local police department, local FBI, uniformed crime reports, incidents that occurred on the property in the past, and a cap index report and score[3]. (Kropp Dep. 9:12-10:3.) The cap index report for Defendant's business location indicated that the crime risk for robbery was almost eight times the national average. (Plaintiff's Exhibit F, Report of Daniel H. Kropp at 7.) Thus, Plaintiffs argue that the Defendants did not take adequate steps to determine the foreseeable crime risk. They also argue that the security measures in place were focused on protecting cars, not people. (Resp. in Opp. to Mtn. for Summ. Judgment at 9.)

When Defendants assumed ownership and control of the premises on September 1, 2000, their regional security manager, Stripling, assessed the security of the physical plant. (Affidavit of Stripling ¶ 1-4.) During his visit, he spoke with employees and management from the previous owners and questioned them about security problems. None was reported. (Id. ¶ 5.) Stripling recommended upgrades to existing security measures[4]: a new color closed circuit television system with nine cameras, tiger teeth at the areas of ingress and egress, gate arms and a checkpoint booth

---

[3] A cap index score set forth in a Crimecast report is based upon the relationship between the demographics of a community and the likelihood that a crime would occur on a property in that community. It is a statistical scaling system to predict whether certain crimes will happen at a particular location. (Kropp Depo. 28:16-29:8).

[4] The site already had perimeter fencing and an existing black and white closed circuit television system.

10

at the exit. (Id. ¶ 7.) Stripling's recommendations were implemented and installation was completed in October, 2000. All security measures were fully operational when the Gols were assaulted and robbed. No crimes occurred on the premises between the installation of the new security measures and the assault on the Gols.

Against the practical experience of the Defendants at their location on Airways, Plaintiffs offer the cap index score. They also note that the percentage of robberies in Memphis, Tennessee, was almost twice the national average in 2000 and 2001. Additionally, the Memphis Airport Police Department reported the occurrence of 453 crimes at the Memphis International Airport in 2001, including 50 crimes against persons.[5] (Plaintiff's Exhibit F, Report of Daniel H. Kropp at 7.)

The cap index score uses community statistics to predict the likelihood of a crime at a specific location. It does not speak to the McClung requirement of prior crimes on or in the immediate vicinity of Defendants' premises. Evidence that the entire city of Memphis had a higher percentage of robberies than the national average also fails to address the McClung requirement. In contrast to the McClung and Staples cases, Plaintiffs here have not cited multiple incidents of crime at Defendants' location or in the

---

[5]Of course, most of the crimes reported in Memphis or at the Airport during 2001 would have occurred after the attack on the Gols on February 21, 2001.

11

immediate vicinity. Plaintiffs offer crime statistics for the Memphis International Airport, which is a special entity with its own police force and is not in the immediate vicinity of Defendants' premises or comparable to those premises for purposes of this analysis. (Plaintiffs' Exhibit F, Report of Daniel H. Kropp at 7.) Most of the Airport statistics post-date the crime. Plaintiffs offer no evidence that neighboring businesses or other car rental companies in the immediate vicinity had experienced similar robberies or even that they had a high rate of crime.

In McClung, approximately 164 criminal incidents had occurred on or next to defendant's parking lot in the year before the crime. In Staples, plaintiff offered evidence of 286 prior criminal incidents at the mall where she was abducted, and she had notified mall employees that she was being stalked. Here, Plaintiffs' sole evidence of prior crime relevant to this inquiry is the theft of two vehicles in September, 2000, before Defendants had made extensive improvements to security systems and months before Plaintiffs were robbed. Defendants had no reason to know, from what they had or should have observed or from past experience, that criminal acts against the Gols were reasonably foreseeable. Absent specific, additional evidence of crime on or in the immediate vicinity of Defendants' premises, the court concludes that the Plaintiffs have failed to establish that the Defendants owed them a duty.

12

Assuming arguendo that Plaintiffs could establish a duty owed to them by the Defendants, Plaintiffs would not be able to meet their burden of proving that the Defendants' conduct fell below the applicable standard of care. As the court has already noted, there is minimal proof of specific, prior crimes at Defendants' location or in the immediate vicinity, and the Defendants had since made extensive improvements to security based on the recommendations of Stripling, their security specialist. That Defendants could have taken more precautions does not make their actions those of an unreasonable person. Defendants' actions were reasonable and adequate based on the history of criminal activity at the Airways location and in the immediate vicinity.

## VI. Conclusion

Because the Plaintiffs cannot establish essential elements of their negligence claim, the Defendants' motion for summary judgment is GRANTED.

So ORDERED this 21st day of December 2005.

/s/ signature

SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

13

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 65 in case 2:03-CV-02983 was distributed by fax, mail, or direct printing on December 23, 2005 to the parties listed.

---

Kenneth T. Levine
NELSON LEVINE DE LUCA & HORST
Ste. 280
512 Township Line Rd.
Blue Bell, PA 19422

Rex L. Brasher
BROWN BRASHER & SMITH
5100 Poplar Avenue
Ste. 2515
Memphis, TN 38137

Ashley Yarnell Baskette
SHUTTLEWORTH WILLIAMS, PLLC
200 Jefferson Ave.
Ste. 1500
Memphis, TN 38103--002

R. Scott Vincent
LEITNER WILLIAMS DOOLEY & NAPOLITAN-Memphis
254 Court Ave.
Second Floor
Memphis, TN 38103

Edward I. Curry
SHUTTLEWORTH WILLIAMS, PLLC
200 Jefferson Ave.
Ste. 1500
Memphis, TN 38103--002

Lance K. Oliver
LAWRENCE & RUSSELL
5050 Poplar Ave.
Ste. 1717
Memphis, TN 38157

Michael J. Kurtis
Four Sentry Parkway
Suite 300
Blue Bell, PA 19422


Honorable Samuel Mays
US DISTRICT COURT